IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

Case No. 1:23-cv-02470-CEF

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

     Plaintiff,

v.

ANTONIO'S PIZZA, INC. d/b/a ANTONIO'S
SHOPPES AT PARMA

     Defendant.

_____

## PLAINTIFF'S MOTION FOR DEFAULT FINAL JUDGMENT AND MEMORANDUM IN SUPPORT

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 55(b)(2), hereby moves for entry of a Default Final Judgment against defendant Antonio's Pizza, Inc. d/b/a Antonio's Shoppes at Parma ("Defendant"), and states as follows:

## PROCEDURAL SUPPORT FOR DEFAULT FINAL JUDGMENT

1.     On December 29, 2023, Plaintiff filed its Complaint in this action.

2.     On January 22, 2024, Defendant was served with a copy of the Summons and Complaint in this action.  See D.E. 5.

3.     On February 27, 2024 (following expiration of Defendant's response deadline), Plaintiff filed its Motion for Clerk's Default against Defendant. See D.E. 7.

4.     On February 28, 2024, the Clerk entered a Clerk's Default against Defendant.  See D.E. 8.

## **FACTUAL SUPPORT FOR DEFAULT FINAL JUDGMENT**[1]

### I.  **Plaintiff's Business and History**[2]

10.  Plaintiff is in the business of licensing high-end, professional photographs for the food industry.

11.  Plaintiff operates on a subscription basis whereby it charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a ***minimum*** monthly fee of $999.00 (https://preparedfoodphotos.com/featured-subscriptions/) for access to its library of professional photographs.

12.  Plaintiff's standard licensing terms require a minimum of a twelve (12) month licensing commitment (https://preparedfoodphotos.com/terms.of.use.php) to avoid scenarios whereby a licensee pays for one (1) month of access, downloads the entire library of 20,000+ photographs, and immediately terminates the license agreement.

13.  Plaintiff's business model relies on its recurring monthly subscription service and the income derived therefrom such that Plaintiff can continue to maintain its impressive portfolio.

14.  Plaintiff has numerous paying subscribers paying monthly subscription fees ranging from $999.00/month to $2,500.00/month (depending on the number of 'end users' for which Plaintiff's photographs are to be used).  Generally stated, the bulk of Plaintiff's subscribers are professional ad agencies that develop weekly ads/grocery store websites for their own 'end users' (i.e., grocery stores, meat/dairy sellers, etc.).

---

[1]      "Once default is  entered,  the defaulting party  is  deemed  to  have admitted all  of  the  well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments."  Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing Visioneering Constr. v. U.S Fid. & Guar., 661 F.2d 119, 124 (6th Cir. 1981)); see also Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

[2]      The facts set forth herein are based upon the well-pleaded allegations of the Complaint and the February 19, 2024, Declaration of Rebecca Jones (the "Jones Decl."), a true and correct copy of which is attached hereto as Exhibit "A."

15.     Plaintiff owns each of the photographs available for license on its website and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers.  To that end, Plaintiff's standard terms include a limited, non-transferable license for use of any photograph by the customer only.  Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

## II.     The Work at Issue in this Lawsuit

16.     In 1997, a professional photographer employed and/or contracted by Plaintiff created a photograph of a bowl of spaghetti and meatballs titled "SpaghettiMeatball012_ADL" (the "First Photograph"). A copy of the First Photograph is displayed below:



17.     The First Photograph was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff) with the Register of Copyrights on February 12, 2017 and was assigned Registration No. VA 2-064-187.  A true and correct copy of the Certificate of Registration pertaining to the First Photograph is attached to the Complaint as Exhibit A thereto.

18.     In 2007, a professional photographer employed and/or contracted by Plaintiff created a photograph of a plate of salad and a bowl of soup titled "SoupSalad001" (the "Second Photograph"). A copy of the Second Photograph is displayed below:



19.     The Second Photograph was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff) with the Register of Copyrights on August 26, 2016, and was assigned Registration No. VA 2-014-921. A true and correct copy of the Certificate of Registration pertaining to the Second Photograph is attached to the Complaint as Exhibit B thereto.

20.     The First Photograph and the Second Photograph are collectively referred to herein as the "Work."

21.     Plaintiff is the owner of the Work and has remained the owner at all times material hereto.

**III.     Defendant's Unlawful Activities**

22.     Defendant is an Italian restaurant serving the Cleveland area.

23.     Defendant advertises/markets its business through its website (https://www.antoniosparmatown.net/) and other forms of advertising.

24.     On a date after the above-referenced copyright registration of the Work, Defendant

4

displayed and/or published the Work on its website, webpage, and/or social media (at https://www.antoniosparmatown.net/catering and https://www.antoniosparmatown.net/salads-and-sandwiches):





25.     A true and correct copy of screenshots of Defendant's website, webpage, and/or social media, displaying the copyrighted Work, is attached to the Complaint as Exhibit C thereto.

26.     Defendant is not and has never been licensed to use or display the Work. Defendant never contacted Plaintiff to seek permission to use the Work in connection with its business or for

any other purpose.

27.     Defendant utilized the Work for commercial use.

28.     Upon information and belief, Defendant located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for its own commercial use.

29.     Plaintiff's primary business is the creation of new photo/video content and licensing such content to supermarkets, ad agencies, etc.  To ensure that Plaintiff's valuable intellectual property is not being misappropriated (which necessarily lowers the value thereof), Plaintiff employs a full-time paralegal and other staff that each (when time permits) perform reverse-image searches using Google Images (https://www.google.com/imghp?hl=en) and review grocery store electronic/print ads to determine whether Plaintiff's images are being misused.

30.     Plaintiff's staff generally searches using a rotating sub-set of photographs that may be illegally/improperly published by non-licensees.  Given the volume of Plaintiff's library, Plaintiff was reasonably unable to discover Defendant's improper use of the Work at issue in this lawsuit prior to the aforementioned date of discovery.

31.     Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff first discovered Defendant's unauthorized use/display of the Work in January 2021.

32.     Following Plaintiff's discovery of Defendants' infringement, Plaintiff retained counsel to pursue this matter. Plaintiff (through counsel) sent (via Federal Express and e-mail) an initial infringement notice to Defendant to notify it of the impermissible use.  Defendant did respond to counsel's follow-ups, claiming that it did not know who published the Work on its website and then failing to respond to several follow-up attempts by counsel.

## **ARGUMENT**

## I.     **Applicable Legal Standards**

Federal Rule of Civil Procedure 55 sets forth two steps to obtain a default judgment.  First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default.  Fed. R. Civ. P. 55(a).  Second, after entry of the clerk's default, the Court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2).

## II.       Plaintiff is Entitled to Judgment on its Claim for Copyright Infringement

The Copyright Act, 17 U.S.C. § 501(a), provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)] ... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). Copyright infringement has two elements that must be proven: "(1) ownership of the copyright by the plaintiff; (2) copying by the defendant."  Ford Motor Co. v. Airpro Diagnostics LLC, No. 20-CV-10518, 2022 U.S. Dist. LEXIS 228708, at *23 (E.D. Mich. Dec. 20, 2022).

### 1.       Plaintiff Owns a Valid Copyright

With respect to the first element, a certificate of registration "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.  The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c).  Here, the Complaint alleges that the Work was not registered until later than 5 years from first publication.  The registration certificate therefore does not constitute "prima facie" evidence of validity, but it certainly is evidence enough to satisfy the first element of an infringement claim.  See, e.g., Ultra-Images, LLC v. Franclemont, No. 05-60538-CIV, 2007 U.S. Dist. LEXIS 93610, at *11-12 n.3 (S.D. Fla. Dec. 20, 2007) ("Defendants also urge this Court to find invalidity of the registration because the registration was made over five years after the Jesse

Portrait was published…. Based on the record at this stage in the proceeding, the Court cannot

find, as a matter of law, that the certificate of registration is invalid."); Lifetime Homes, Inc. v.

Residential Dev. Corp., 510 F. Supp. 2d 794, 801 (M.D. Fla. 2007) ("Although Plaintiff did not

file the copyright registration within the five year time period, Plaintiff has produced the certificate

of registration for the Model A and Defendants have not pointed to any evidence indicating that

Plaintiff's certificate of registration is not valid. Further, Defendants make no argument nor present

any evidence to support a finding that Plaintiff does not in fact own the copyright for the Model A

plans.").  As succinctly explained in Southall v. Force Partners, LLC, No. 1:20-cv-03223, 2021

U.S. Dist. LEXIS 164680, at *7 (N.D. Ill. Aug. 31, 2021):

> The last sentence is crucial here: Section 410(c) confers discretion
> on the court on how to treat a certificate obtained five years after
> publication. In other words, the statute mandates a presumption of
> validity for pre-five-year certificates, but the statute does
> not ***forbid***[3] a presumption of validity for post-five-year certificates.
> Post-five-year certificates are still eligible to qualify as prima facie
> evidence of a valid copyright. Yurman Design, Inc. v. Golden
> Treasure Imps., Inc., 275 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003)
> (holding that late registrations can be considered prima facie
> evidence of valid copyright); Telerate Sys., Inc. v. Caro, 689 F.
> Supp. 221, 227 n. 7 (S.D.N.Y. 1988) (explaining "[e]ven if the
> certificate were ... issued more than five years after the actual date
> of first publication, the court would be inclined to give the certificate
> the weight of prima facie evidence, as permitted under Section
> 410(c)."). ***In any event, the strength of the presumption is not a
> matter that should be resolved at the pleading stage. The parties
> must develop facts in discovery before the certificate's evidentiary
> weight can be presented to the Court for decision***.[4] The copyright-
> infringement claim survives.

Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights

as set forth above.  By virtue of its default, Defendant does not have any right to challenge

---

[3]      Emphasis in original.

[4]      Emphasis added.

Plaintiff's registration/ownership of a valid copyright.

### 2. Defendant Copied the Work

A plaintiff may establish an inference of copying by showing that (1) "defendant had access to the work," and (2) "that the original and allegedly infringing work are substantially similar." Parker v. Winwood, 938 F.3d 833, 836 (6th Cir. 2019). However, "even when a plaintiff is unable to prove access, she can establish copying by showing a 'striking similarity' between her work and the allegedly infringing one.'" Id. (quoting Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp., 361 F.3d 312, 317 (6th Cir. 2004)). Here, the screenshots of Defendant's website unequivocally show Defendant's copying of the Work. Defendant's default further constitutes an admission as to such copying. There is no factual or subjective issue of "substantial similarity" here as Defendant copied and published a duplicate image of the Work. Thus, Defendant undisputedly copied Plaintiff's copyrighted work and a Final Default Judgment should be entered against Defendant on Count I of the Complaint.

## III. Defendant's Infringement was Willful

"Infringement is willful when the infringer has knowledge that his conduct constitutes copyright infringement." Calibrated Success, Inc. v. Charters, 72 F. Supp. 3d 763, 774-75 (E.D. Mich. 2014). Knowledge may be either actual or constructive. Id. "To prove constructive knowledge, courts have generally required the copyright owner to show that the 'infringer has acted in reckless disregard of the copyright owner's right.'" Id. When awarding increased damages in the context of Section 504(c)(2), "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." Cable/Home Communication Corp. v. Network Productions, 902 F.2d 829, 851 (11th Cir. 1990) (internal quotation omitted).

"A determination of willfulness requires an assessment of a defendant's state of mind." Friedman v. Live Nation Merch., Inc., 833 F.3d 1180, 1186 (9th Cir. 2016).  Willfulness determinations are thus difficult when a defendant (as here) defaults and does not participate in the lawsuit.  See, e.g. Pearson Educ., Inc. v. Aegis Trading Corp., No. 16-CV-0743 (GBD)(SN), 2017 U.S. Dist. LEXIS 45887, at *18 (S.D.N.Y. Mar. 27, 2017) ("The reason for why it is difficult to assess defendants' profits or plaintiffs' lost revenues is defendants' willful conduct and their default and refusal to participate in this litigation.").  As a result, the vast majority of courts will infer willfulness from a defendant's default.  See, e.g. W. Stone Works Co. v. Wilson's Funeral Home, No. 2:21-cv-02103-TLP-tmp, 2021 U.S. Dist. LEXIS 133878, at *5 (W.D. Tenn. July 19, 2021) ("[B]ecause Plaintiff obtained a default judgment here, Plaintiff has met its burden of showing that Defendants willfully infringed Plaintiff's work."); Kinman v. Burnop, No. 3:18-cv-00809, 2020 U.S. Dist. LEXIS 24461, at *12 (M.D. Tenn. Feb. 12, 2020) ("Where a defendant has defaulted, willful copyright infringement is proven."); Microsoft Corp. v. McGee, 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007) (same).

In addition to its default, Defendant's willfulness is further demonstrated by the inclusion of a copyright disclaimer on its website ("© 2023 The content on this website is owned by us and our licensors. Do not copy any content (including images) without our consent.") – indicating that Defendant understands the importance of copyright protection/intellectual property rights and is actually representing that it owns each of the photographs published on its websites. See, e.g., Bell v. ROI Prop. Grp. Mgmt., LLC, No. 1:18-cv-00043-TWP-DLP, 2018 U.S. Dist. LEXIS 127717, at *3 (S.D. Ind. July 31, 2018) ("[T]he willfulness of ROI's infringement is evidenced by the fact that at the bottom of the webpage on which the Indianapolis photograph was unlawfully published appeared the following: 'Copyright © 2017.' By placing a copyright mark at the bottom of its

webpage that contained Mr. Bell's copyrighted Indianapolis Photograph, Mr. Bell asserts ROI willfully infringed his copyright by claiming that it owned the copyright to everything on the webpage."); John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc., Civil Action No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *12-13 (N.D. Tex. May 1, 2013) ("Once on Defendant's website, Defendant asserted ownership of Plaintiff's Registered Work by including a copyright notice at the bottom of the page. Based on these allegations, the Court finds Plaintiff has sufficiently pled a willful violation…."). Defendant clearly understands that professional photography such as the Work is generally paid for and cannot simply be copied from the internet.

The above demonstrates that Defendant had actual knowledge, or at least acted with reckless disregard, of the fact that its conduct infringed upon Plaintiff's exclusive copyrights in the Work. Accordingly, Defendant's default and the well-pled facts of the Complaint, which are admitted by Defendant's default, establish that Defendant's infringement of the Work was willful and deliberate.

## IV.    Plaintiff's Damages

### A.    *Actual Damages*

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer." Leonard v. Stemtech Int'l, Inc., 834 F.3d 376, 390 (3d Cir. 2016); see also Lorentz v. Sunshine Health Prods., No. 09-61529-CIV-MORE, 2010 U.S. Dist. LEXIS 148752, at *12 (S.D. Fla. Sep. 7, 2010) (actual damages are "often measured by the revenue that the plaintiff lost as a result of the infringement, which includes lost sales, lost opportunities to license, or diminution in the value of the copyright."). The copyright owner may also recover the fair market value of the licensing fee that

would have been charged for the work that was infringed.  See Leonard, 834 F.3d at 390 ("One method involves calculating the fair market value of the licensing fees the owner was entitled to charge for such use.").

As set forth above and in the declaration of Rebecca Jones (Plaintiff's Secretary), Plaintiff exclusively operates on a subscription basis whereby it provides access to its library at a minimum of $999.00 per month (depending on the total number of end-users allowed access to the photographs) with a minimum twelve (12) month contract commitment (i.e., a licensee must pay at least $11,988.00 for access to any of Plaintiff's photographs for anywhere from 1 day to 1 year). Plaintiff generally does not license individual photographs as doing so greatly diminishes the value of Plaintiff's subscription model.  Plaintiff offers semi-exclusivity to its licensees – Plaintiff knows exactly what ad agencies, grocery stores, etc. have access to its library and can assure its customers that a competitor down the street will not be using the same photograph(s) in its own weekly ads, circulars, internet marketing, etc.  Plaintiff's customers often spend tens (if not hundreds) of thousands of dollars publishing weekly ads and developing marketing campaigns to advertise their products/services.

Because Plaintiff markets its photographic library on the basis of its exclusivity, the copying and publishing of individual photographs by non-licensees greatly reduces the value of Plaintiff's library.  Plaintiff employs multiple full-time employees to locate and identify such nonauthorized uses in an effort to ensure exclusivity to Plaintiff's licensees.  Plaintiff incurs these expenses (payroll etc.) to protect the integrity of its library.

Plaintiff's library of photographs was created over a 15 – 20 year period of time (with new creative works being made through the present date).  Plaintiff has employed professional staff photographers and likewise utilizes other professional photographers (on a work-for-hire basis), all of which specialize in high-end product/food photography.  All of these photographers are

provided specific instructions with respect to Plaintiff's vision/overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal.  For any image (including the Work), Plaintiff's photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images before identifying 1 – 2 for inclusion in Plaintiff's library.  For any given photograph, Plaintiff then has costs associated with post-processing the image in specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print and digital media advertising.

When Plaintiff's staff discovers an existing (i.e., published and available for viewing on the internet) infringement of one of its photographs, Plaintiff creates an infringement notice on the date of discovery or within 1 – 2 days thereafter.  The infringement notice identifies the date of discovery, displays the subject photograph, and displays a screenshot of the infringer's alleged use together with a website URL (if available) where the infringement is located.  A true and correct copy of Plaintiff's infringement notices with respect to the Work at issue in this lawsuit are attached to the Jones Decl.

The screenshot of Defendant's website shows that the First Photograph was published by Defendant at least as of March 29, 2021, and the Second Photograph was published by Defendant at least as of January 20, 2021.  Defendant's failure to participate in this lawsuit has limited Plaintiff's ability to conduct discovery to fully discover the extent of its infringement and/or the exact date on which the Work was uploaded and/or removed from Defendant's website, but it appears that the Work was uploaded at least as early as June 1, 2018 and remained published thereat through at least March 29, 2021.  This can be determined by viewing the Wayback Machine (http://web.archive.org/), a digital archive of the World Wide Web founded by the Internet

13

Archive.  Courts often take judicial notice of the Wayback machine's captures/screenshots of websites.  See, e.g. Martins v. 3PD, Case No. 11-11313-DPW, 2013 U.S. Dist. LEXIS 45753, at *47-49 n.8 (D. Mass. Mar. 28, 2013) ("I take judicial notice of various historical versions of the 3PD website available on the Internet Archive . . . as facts readily determinable by resorts to a source whose accuracy cannot reasonably be questioned."); Pond Guy, Inc. v. Aquascape Design, Inc., Case No. 13-13229, 2014 U.S. Dist. LEXIS 85504, at *9 (E.D. Mich. June 24, 2014) (taking judicial notice of the parties' historical presence as represented by the Internet Archive because "[a]s a resource the accuracy of which cannot reasonably be questioned, the Internet Archive has been found to be an acceptable source for taking of judicial notice.").  Here, the Wayback Machine indexed the subject webpage on June 1, 2018 (https://web.archive.org/web/20180601120316/https://www.antoniosparmatown.net/) which shows the Work published thereon (with earlier-dated screenshots not showing the Work thereon – e.g., https://web.archive.org/web/20160608123522/https://www.antoniosparmatown.net/).

For each year that Defendant published the Work, Plaintiff would be owed an annual license fee of (at minimum) $11,988.00.  Here, it is known that the Work was published as of June 1, 2018 and that it remained published by Defendant through at least March 29, 2021.  Given the above, the fairest beginning measure of Plaintiff's actual damages in this case is the $11,988.00 annual cost for licensing any image from Plaintiff's library multiplied by the number of years of use.  As such, Plaintiff believes its actual damages are equivalent to a 3-year licensing period – (a) June 1, 2018 –May 31, 2019; (b) June 1, 2019 – May 31, 2020; and (c) June 1, 2020 – March 29, 2021.  This amounts to a total of **$35,964.00** ($11,988 x 3 years of use).

In Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v. Patriot Fine Foods LLC, the $11,988.00 license was found to be a useful tool to properly calculate Plaintiff's damages.

Here, Plaintiff provides access to its library at a price $999.00 per month with a minimum twelve-month contract commitment, meaning, a licensee must pay $11,988 for access to any of Plaintiff's photographs for any amount of time within a one-year period. (DE 13, Ex. A. ¶¶ 4–5). Plaintiff has numerous clients who pay this annual subscription fee. (*Id.* ¶ 4). While that demonstrates that licensors have indeed licensed its library on an annual basis for $11,988, it is unclear whether any licensor has paid that amount to utilize a single photograph in the library. Nevertheless, I find $11,988 to be a useful proxy given the below-described difficulties in calculating with precision Plaintiff's actual damages.

Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC, No. 21-82129-CV, 2022 U.S. Dist. LEXIS 205649, at *10 (S.D. Fla. Mar. 22, 2022).  The same analysis was adopted by a multitude of other courts to subsequently consider the issue of Plaintiff's damages based on the facts before those courts.  See, e.g. Prepared Food Photos, Inc. v. 193 Corp., No. 1:22-cv-03832, 2022 U.S. Dist. LEXIS 205690 (N.D. Ill. Sep. 21, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of pre-registration usage of a single photo; Prepared Food Photos, Inc. v. Miami Beach 411 Corp., No. 22-23197-CIV-ALTONAGA/Damian, 2022 U.S. Dist. LEXIS 216003 (S.D. Fla. Nov. 28, 2022) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photo); Prepared Food Photos, Inc. v. Fat Daddy Co., No. 22-61671-CIV-SINGHAL, 2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Perry Wings Plus, Inc., No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *24 (S.D. Fla. Dec. 19, 2022) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for a 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Silver Star of Brooklyn / Brooklyn's Best Inc., No. 1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037 (E.D.N.Y. Jan. 23, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual

license fee for 3-year use with a 2x multiplier applied thereto); _Prepared Food Photos, Inc. v. Chi.-Mkt.-Distrib., Inc._, Civil Action No. 1:22-cv-03299-CNS-MEH, 2023 U.S. Dist. LEXIS 88407 (D. Colo. May 19, 2023) (awarding Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years of usage of a single photo); _Prepared Food Photos, Inc. v. Exec. Dining Club, Inc._, No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676 (S.D.N.Y. May 25, 2023) (awarding Plaintiff $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); _Prepared Food Photos, Inc. v. Shadowbrook Farm LLC_, No. 1:22-CV-00704 (LEK/ATB), 2023 U.S. Dist. LEXIS 110171 (N.D.N.Y. June 27, 2023) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); _Prepared Food Photos, Inc. v. WaDaYaNeed, LLC_, No. 1:22-CV-01270 (LEK/ATB), 2023 U.S. Dist. LEXIS 110993 (N.D.N.Y. June 28, 2023) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); _Prepared Food Photos, Inc. v. Exec. Dining Club, Inc._, No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676, at *2 (S.D.N.Y. May 25, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); _Prepared Food Photos, Inc. v. Mikey's Famous Marinades Corp._, No. 23-CV-1484 (JMA) (AYS), 2023 U.S. Dist. LEXIS 132222 (E.D.N.Y. July 31, 2023) (awarding $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for 1-year use with a 2x multiplier applied thereto); _Prepared Food Photos, Inc. v. New Kianis Pizza & Subs, Inc._, No. 1:23-CV-926-JRR, 2024 U.S. Dist. LEXIS 52023 (D. Md. Mar. 25, 2024) (rejecting report & recommendation to award $1,000.00 in statutory damages and instead awarding $47,952.00 in statutory damages, representing the $11,998.00 annual license fee for 2-year use with a 2x multiplier applied thereto).

Defendant's inaction and refusal to participate in this lawsuit suppressed the information

necessary to fully calculate Plaintiff's actual damages. Similarly, Defendant's refusal to cooperate in this lawsuit has prevented Plaintiff from discovering any profits received by Defendant that would be recoverable pursuant to 17 U.S.C. § 504(b) in addition to Plaintiff's actual losses. To establish Defendant's profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Defendant solely controls all information concerning its gross revenue related to its infringing uses of the Work, and it has stymied Plaintiff's ability to present that evidence to the Court.

### B.   *Statutory Damages are Appropriate for Defendant's Willful Copyright Infringement*

17 U.S.C. § 504(c)(2) provides that, "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." "Merely proving willfulness does not automatically entitle a copyright holder to the statutory maximum. The Court retains broad discretion to determine an appropriate damages figure in each case." AF Holdings LLC v. Bossard, 976 F. Supp. 2d 927, 930 (W.D. Mich. 2013).

Where (as here) willful infringement has occurred, courts will generally award 3x – 5x the lost licensing fees. See, e.g. Nicholl v. Sec. Studies Grp., Civil Action No. 1:21cv0563 (TSE/JFA), 2022 U.S. Dist. LEXIS 95811, at *11 (E.D. Va. Mar. 25, 2022) ("In cases of knowing and deliberate infringement, it is common practice to award more than the statutory minimum and more than the infringer would have paid in licensing fees. An award equal to five times the typical licensing fee is also more likely to deter future copyright infringement than an award of the licensing fees alone."); Broad. Music, Inc. v. Prana Hosp'y, Inc., 158 F. Supp. 3d 184, 199

(S.D.N.Y. 2016) ("[C]ourts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid."); Broad. Music, Inc. v. N. Lights, Inc., 555 F. Supp. 2d 328, 332 (N.D.N.Y. 2008) ("[T]o put infringers on notice that it costs less to obey the copyright laws than to violate them, a statutory damage award should significantly exceed the amount of unpaid license fees. As such, courts often impose statutory damages in an amount more than double unpaid licensing fees where the infringement was not innocent.").

In cases of non-willful infringement, statutory damages may be awarded up to $30,000.00 resulting from the infringement of the copyrighted Work. See 17 U.S.C. § 504(c)(1). However, as discussed above, Defendant's conduct – as well as its decision not to defend against Plaintiff's claim – demonstrates that its conduct is willful.

> Had Plaintiff been able to conduct discovery and gather information on the scope of Defendant's infringement, actual damages would have likely been greater than the reasonable licensing fee for the Work. Here, doubling $11,988 will appropriately account for the circumstances surrounding this infringement and the need for deterrence. Defendant's declination to participate in this litigation impeded the court's ability to calculate the total extent of Plaintiff's actual damages, including Defendant's profits. Defendant likely profited to some degree from its unauthorized use; Plaintiff alleges that Defendant made commercial use of the Work for at least one year, advertising the sale of "USA Prime Angus London Broil" on its website for $9.99 per pound. (DE 1 ¶¶ 15, 17). Further, as described above, Defendant's conduct was willful. And "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." *Cable/Home Commc'n Corp.*, 902 F.3d at 851 (internal quotation omitted). The need to deter future violations is an especially appropriate consideration here, given Defendant's default.

Patriot Fine Foods LLC, 2022 U.S. Dist. LEXIS 205649, at *12-13. The same facts as in Patriot Fine Foods apply to this present case. Plaintiff was unable to conduct discovery or gather information about the extent of Defendant's use of the Work/profits derived therefrom. Plaintiff's

licensing structure is a strong proxy for calculating damages. Likewise to Judge Middlebrooks'

finding in Patriot Fine Foods, and given the circumstances of the instant case, Plaintiff submits

that an award of statutory damages in the amount of ***$71,928.00*** ($35,96400 x 2) under 17 U.S.C.

§ 504(c)(2) is appropriate to compensate Plaintiff for the damages suffered, to create a strong

disincentive against infringers intentionally hiding the profits from their infringing conduct in the

hope of earning more than they can be held accountable for in actual damages, and to deter future

violations of copyright law.   Plaintiff requests the Court to apply the same multiplier Judge

Middlebrooks applied in Patriot Fine Foods, wherein his honor doubled the actual damages (the

one annual period of use) to account for Plaintiff's inability to conduct discovery and to deter

future violations.

Even assuming, arguendo, that the Court is not convinced of the Plaintiff's actual damages,

it is well within the Court's discretion to award substantial damages to the Plaintiff upon a finding

of willfulness. For example, in Corson v Brown Harris Stevens of the Hamptons, LLC, the court

found that willfulness entitled plaintiff to the enhanced statutory damages provided by 17 U.S.C.

§ 504(c)(2) (notwithstanding that the court found the plaintiff proved $0.00 in actual damages):

> So first the main issue was whether defendant's infringement was
> willful. I find here willfulness entitles plaintiff to the enhanced
> statutory damages provided by 17 U.S.C. Section 504(c)(2). The
> standard for willful infringement is not only knowledge on the
> defendant's part that what it did was infringement but also reckless
> disregard of the practice of protecting creativity, the very purpose of
> copyright. When the plaintiff can demonstrate, either directly or
> through circumstantial evidence, that defendant had knowledge that
> its actions constituted infringement, or recklessly disregarded that
> possibility, enhanced statutory damages for willful copyright
> infringement under 17 U.S.C. Section 504(c)(2) are appropriate.
>
> Plaintiff successfully proved that her photograph was copyright
> protected. It's clear that defendant, as a sophisticated business, knew
> there was copyright involved and did nothing to check those rights
> or to clear permission to reprint from the photographer.

19

> I find that the infringement was willful, and I find that the conduct
> of indifference to the rights of others was egregious and that the
> statutory damages should be $25,000. There were no actual
> damages.

Corson v. Brown Harris Stevens of the Hamptons, LLC, 2018 U.S. Dist. LEXIS 248214, at *8 –

9 (S.D.N.Y. Jan. 24, 2018). Corson was a fully litigated case in which, though the Judge found

that plaintiff proved $0.00 in actual damages, a finding of willfulness permitted statutory damages

to be awarded, as "The Supreme Court instructs that the statutory rule formulated after long

experience not merely compels restitution of profit and reparation from injury but also a desire to

discourage wrongful conduct." Corson (referencing F.W. Woolworth Co. v. Contemporary Arts,

Inc., 344 U.S. 228, 233 (1952)).

## V.     Entry of a Permanent Injunction is Appropriate

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising

under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final

injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a

copyright." 17 USCS § 502. Injunctions are regularly issued pursuant to Section 502 because "the

public interest is the interest in upholding copyright protections"; and courts also regularly issue

injunctions as part of default judgements. Arista Records, 298 F. Supp. 2d at 1314 (entering

permanent injunction against Defendants with respect to plaintiff's copyrighted work, including

plaintiff's work to be created in the future).

As established by the well-pled facts of the Complaint and admitted by Defendant's

default, this Court has proper jurisdiction over this action. Defendant's conduct has caused, and

any continued infringing conduct will continue to cause irreparable injury to Plaintiff, such that

Plaintiff has no adequate remedy at law. For example, the ability of Defendant to use Plaintiff's

work for its own commercial benefit without compensation to Plaintiff greatly impairs the market

value of the work, since others competing in that business or in related business areas, will not want to obtain a license to Plaintiff's works if it is already associated with a competing business; and potential licensees of Plaintiff will not want to pay license fees to Plaintiff if they see other commercial enterprises taking and using Plaintiffs photographs for their own commercial purposes without paying any fee at all.

Accordingly, Plaintiff requests the Court to enter a permanent injunction against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, vendors and assigns, and all those in active concert and participation with Defendant, prohibiting them from (a) directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to enter final default judgment against Defendant; award Plaintiff **$91,928.00** for Defendant's infringement of the Work, permanently enjoin Defendant from infringing activities; and for any other relief the Court deem just and proper.

Dated: April 2, 2024                         Respectfully submitted,

*/s/ Jessica A. Barwell*
**WESP BARWELL, L.L.C.**
Jessica A. Barwell (0088716)
Gregory P. Barwell (0070545)
Attorneys at Law
475 Metro Place S. Ste 430

21

Dublin, Ohio 43017
P+F: (614) 456-0488
Email: jbarwell@wesplaw.com
Email: gbarwell@wesplaw.com

*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.  I further certify that on April 2, 2024, the foregoing document and all attachments thereto were served via US Mail to: Antonio's Pizza, Inc., 7401 West Ridgewood Dr., Parma, OH 44129 and via e-mail to: aliciaanne1914@gmail.com.

*/s/Jessica A. Barwell*
Jessica A. Barwell (0088716)